No. 86-174

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

H. D. BUELOW, d/b/a OLIVE MOTOR INN,
GARDNER GRENZ, d/b/a 600 LOUNGE,
ALVIN L. YOUNG

        Plaintiffs and Respondents,

-vs-

JOHN K. WILLEMS and DEPARTMENT OF
REVENUE, STATE OF MONTANA,

        Defendants and Appellants.

---

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Custer,
The Honorable A.B. Martin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Michael G. Garrity argued, Tax Counsel, Dept of Revenue,
        Helena, Montana

    For Respondent:

        H. D. Buelow argued, Miles City, Montana
        Kenneth R. Wilson, Miles City, Montana

---

Submitted:    October 21, 1986

Decided:    February 3, 1987

Filed: FEB 3 - 1987

*Ethel M. Harrison*

---
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The Montana State Department of Revenue (the Department) and John Willems, a Department investigator, appeal a Custer County District Court order which grants a permanent injunction to the plaintiffs (respondents here) H.D. Buelow, Gardner Grenz, and Alvin Young. The injunction prevents the Department from seizing respondents Buelow's and Young's video poker machines and from conducting an administrative hearing on the ownership and licensing of those machines. The issues on appeal are:

(1) whether the District Court erred in granting injunctive relief without a written application or petition from the respondents;

(2) whether the court erred in ruling that the machines of respondents Buelow and Young were entitled to licenses;

(3) whether the issuance of the preliminary injunction violated § 27-19-103, MCA, and/or § 27-19-201, MCA;

(4) whether the Department's seizure of respondents' machines was unlawful;

(5) whether an administrative hearing is required prior to seizure of allegedly illegal video poker machines;

(6) whether the court erred in admitting hearsay testimony into evidence and relying on that evidence;

(7) whether the court erred in adopting respondent Grenz's proposed findings of fact. We note that the District Court found, and Grenz agrees that this appeal is moot as to him. We affirm.

By way of background, we briefly summarize some of the facts set forth in our recent decision Montana Tavern Association v. State of Montana (Mont. 1986), _____ P.2d _____,

2

43 St.Rep. 2180, a case with some bearing on the instant appeal. In 1985, the Montana Legislature passed the Video Draw Poker Machine Control Law, §§ 23-5-601 through -615, MCA, which legalizes the operation of electronic video draw poker machines in Montana. Section 23-5-606, MCA, provides a lengthy, detailed list of specifications required to license video poker machines. Section 23-5-612(2), MCA, provides a grandfather clause:

> A used video draw poker machine may be licensed under subsection (1) without meeting the requirements of 23-5-606 (4)(j), (4)(k), and (4)(o) if the applicant for licensure can establish to the satisfaction of the department that, on the date of application, he owns or possesses a machine which was owned or operated in the state prior to February 3, 1984. A license issued under this subsection expires 1 year from the date of issuance or on July 1, 1987, whichever occurs first.

In June 1985, the Montana Tavern Association and several tavern owners filed a complaint to enjoin the Department from enforcing certain emergency administrative rules which the Department had adopted regarding the poker machines. The Silver Bow County District Court granted those plaintiffs a temporary restraining order. The court later issued preliminary and final injunctions which, along with the restraining order, had the following effects; (1) agreed that the grandfather clause could be construed in two ways, i.e., as authorizing the licensure of (i) all used poker machines in operation before February 3, 1984, or (ii) used poker machines in operation before February 3, 1984, and meeting all the specifications of § 23-5-606, MCA, except subsections (4)(j), (4)(k), and (4)(o); (2) rejected the second construction listed above; (3) enjoined the

Department from enforcing the video poker machine law and its administrative rules so as to deny licenses to the plaintiffs for used machines owned and operated before February 3, 1984; (4) ordered that the machines had to meet certain criteria in the restraining order, along with the statutory provisions and administrative rules not in conflict with the restraining order, in order to be licensed; (5) provided that ". . . county or city license receipts, bills of sale . . . will be sufficient to establish ownership or operation of a used machine on or before February 3, 1984."

Each of the respondents owned at least one video poker machine. Each testified that he had purchased his machine prior to 1984. The applications for state licenses for poker machines ask for the serial number of the machine. These numbers are usually stamped on a metal plate which is affixed to the exterior of the machine. None of the respondents' machines had a metal plate with a manufacturer's serial number. Buelow testified that the distributor removed the plate and marked a number on his machine with a marking pen. On his application for a license, Buelow listed the handwritten number from the machine as the serial number. Grenz's license application listed a number from the machine's logic board as the machine's serial number. A logic board is an internal component of the machine which carries the electronic program and is easily interchangeable between different machines. Young's application listed a number from the inside of his machine as the serial number. The Department, laboring under the Silver Bow County District Court injunction, issued state licenses to each of the three respondents for their poker machines.

Subsequently, the Department determined that the respondents' applications listed machine serial numbers which were identical to numbers on other poker machine license

4

applications. In November 1985, Department officials traveled to Miles City to investigate the machines of Buelow and Grenz. On November 4, 1985, the Department officials seized two of respondent Grenz's poker machines from his place of business. Grenz showed the officials a 1981 or 1982 city license and a canceled check in an attempt to prove that he owned the machines prior to 1984. On November 5, 1985, Department officials seized Buelow's machine at his bar in Miles City. Buelow testified that he informed the officials that he had evidence showing he owned the machine prior to 1984. The evidence included past city licenses for the machine and his canceled check paying for the machine in 1980. Also on November 5, 1985, the officials traveled to Alzada, Montana and seized respondent Young's poker machine from his bar. Young was not present and had no opportunity prior to the seizure to prove that he owned the machine before 1984.

Shortly after the seizures, each respondent filed an affidavit with the Custer County District Court swearing that he had owned his machine or machines prior to February 3, 1984. Each requested the court to issue a temporary restraining order (TRO). On November 5, and in Young's case on November 8, the court issued a TRO restraining the Department from seizing the machines and ordering their return.

On November 14, 1985, the court held a hearing on whether to quash or continue the TRO. Buelow, Grenz and Young all presented evidence (canceled checks, city licenses, or witness testimony) showing that they owned their machines prior to 1984. Two witnesses testified, over a hearsay objection, that a Department employee named Cathy advised them over the phone that handwritten or "logic board" numbers would suffice on their license applications. One of these

5

witnesses had relied on this advice in helping both Buelow and Grenz fill out their applications.

In December 1985, the court permanently enjoined the Department from seizing the machines and from conducting a hearing on the ownership and licensing of the machines. Among other things, the court found (1) that each of the respondents owned his machine prior to 1984; (2) that the seizures of the machines were unlawful; (3) that administrative hearings were required before the Department could seize previously licensed poker machines; (4) that the respondents' machines were entitled to state licenses; (5) that a Department official advised Grenz he could use a "logic board" number on his application; and (6) that the Grenz case had apparently become moot because Grenz obtained a duplicate serial number from the manufacturer thereby satisfying the Department's rules on ownership. This appeal followed.

On December 11, 1986, this Court handed down its decision in Montana Tavern Association v. State of Montana (Mont. 1986), ____ P.2d ____, 43 St.Rep. 2180. That appeal involved the Silver Bow County action mentioned previously wherein the Silver Bow County District Court enjoined the Department from enforcing its administrative rules so as to deny the plaintiffs the right to license poker machines owned and operated before February 3, 1984. We upheld the District Court's ruling interpreting § 23-5-612(2), MCA, as authorizing the licensure of used video poker machines in operation before February 3, 1984. We also specifically affirmed the court's injunction barring the Department from enforcing its administrative rules to the detriment of the plaintiffs and others similarly situated (such as the respondents here). The Montana Tavern Association case bears heavily upon our decision today.

The first issue is whether the Custer County District Court erred in granting injunctive relief without a written application or petition from the respondents. Section 27-19-301(1), MCA, states that,

> No preliminary injunction may be issued without reasonable notice to the adverse party of the time and place of the making of the application therefor.

We find no Montana statute that requires a party to submit a formal, written application or petition for an injunction. Moreover, the record demonstrates that the Department had notice of the respondents' claims and the nature of the controversy from the day the machines were seized (also the day the TRO was issued). Therefore, we find no error under this issue.

The second issue is whether the court erred in implicitly finding that the machines of respondents Buelow and Young were entitled to state licenses. In June 1985, the Silver Bow County District Court, acting in the Montana Tavern Association case, set forth the controlling licensing criteria for the Department to use. The most important element in that criteria is that the used machine must be a machine owned or operated in the state on or prior to February 3, 1984. That element is the bone of contention. The Department does not contend that the respondents' machines fail to meet the other requirements. The Department does complain that the machines do not have a serial number stamped onto a metal plate and affixed permanently onto the machine. Under the Montana Tavern Association case, affirmed by this Court, that complaint is irrelevant. Under that case, and the Silver Bow County District Court order, the dispositive inquiry is whether the machines were owned or operated prior to February 3, 1984. The District Court here

found that the respondents all owned their machines prior to February 3, 1984. The record reveals substantial evidence to support that finding. Therefore, we hold that the court did not err in finding that respondents were entitled to licenses.

The third issue is whether the court violated § 27-19-103, MCA, and/or § 27-19-201, MCA, in issuing the TRO and injunction. The Department first charges that respondents failed to show they were entitled to an injunction under § 27-19-201, MCA. That statute sets forth certain circumstances which will justify the issuance of an injunction. The undisputed evidence before the District Court tended to show that the seizure of the machines would cause irreparable loss of business to the respondents. The District Court cited that evidence in its order and, under § 27-19-201(2), MCA, that evidence was sufficient to warrant the issuance of an injunction.

The Department also charges that § 27-19-103(4) and (6), MCA, prohibited the court from issuing an injunction in this case. Those subsections provide that an injunction cannot be granted:

> . . .
>
> (4) to prevent the execution of a public statute by officers of the law for the public benefit;
>
> . . .
>
> (6) to prevent the exercise of a public or private office, in a lawful manner, by the person in possession; . . .

Our resolution of the second issue is also determinative of this issue. Given that all the machines here in question were owned and operated before February 3, 1984, those machines were entitled to state licenses. Therefore, when

8

the Department seized those <u>legally licensed</u> machines, the Department was not executing a public statute nor was it executing a public office in a lawful manner. Thus, the issuance of the injunction did not violate § 27-19-103, MCA.

We hold that the District Court did not abuse its discretion in issuing the injunction. We decline to address the other issues raised on appeal.

Affirmed.

Justice

We concur:

Chief Justice

Justices

9